UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
EDWIN J. PAPETTI, JR.

**MEMORANDUM & ORDER**

        Petitioner,

Civil Action No. 09-3626

   -against-

UNITED STATES OF AMERICA,
---------------------------------------------------X

**APPEARANCES:**

**For Petitioner:**
Russo, Karl Widmaier & Cordano, PLLC
400 Town Line Road
Hauppauge, NY 11788
By:    John Cucci Jr., Esq.


**For Respondent:**
Loretta Lynch
United States Attorney, Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722
By: Richard T. Lunger, AUSA

**HURLEY, Senior District Judge:**

        Petitioner Edwin J. Papetti, Jr. ("petitioner" or "Papetti") moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence arising from a 2008 conviction in this Court. For the reasons set forth below, the motion is denied.

## Background

        Petitioner was the owner and operator of DVD World Picture Corporation ("DVD World"), an online vendor that sold, inter alia, DVDs, music, and computer games. On March 27, 2008, pursuant to a written plea agreement, petitioner pled guilty to an information charging him with knowingly and intentionally using and possessing with intent to use forged and

counterfeited postage meter stamps in violation of 18 U.S.C. § 501.

The written plea agreement set forth, inter alia, that the count charged in the information carried a maximum term of imprisonment of five years, no minimum term of imprisonment, a maximum fine of $250,000 or twice the value of the gross gain or loss, whichever is greater, and restitution to be determined by the court. (Plea Agreement at 1-2.) It further advised that the United States Sentencing Guidelines were not mandatory but advisory and that the government estimated that the likely adjusted offense level for Petitioner was 17, calculated as follows:

| | | |
|---|---|---|
| Base Offense Level (2B5.1(a)) | | 9 |
| Plus: Loss more that $70,000 (2B5.1(b)(1)(B) and (2B1.1(b)(1)(E)) | | +8 |
| Plus: Custody or Control over a Counterfeiting Devise or Materials (2B5.1(b)(2)(A)) | | +2 |
| Less: Acceptance of Responsibility (3E1.1(a)) | | -2 |
| | | 17 |

(Plea Agreement at 2-3.) Assuming no prior convictions, the plea agreement advised that this level carried a range of imprisonment of 25 to 30 months. (*Id.*) Further, if Petitioner pled guilty before March 28, 2008, the government would move for an additional one point reduction, resulting in an offense level of 16 and carrying a range of imprisonment of 21-27 months, assuming no prior convictions. (*Id.*) The plea agreement further advised that the estimate was not binding, inter alia, on the Court and "if the Guideline calculation of the Court is different from the Guideline estimate set forth [above], [Petitioner] would not be entitled to withdraw the guilty plea." (*Id.*)

Under the plea agreement, Petitioner waived his right to "appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 30 months or below." (Plea Agreement at 3.)

Petitioner pled guilty before Magistrate Judge A. Kathleen Tomlinson. Prior to accepting the plea, Judge Tomlinson advised Petitioner, inter alia, that he had the right to plead not guilty and that by pleading guilty there will be "no right to appeal or collaterally attack at any time or question whether you are guilty or not." Mar. 27, 2008 Tr. at 8. Petitioner was further advised that under the plea agreement he was waiving his right to appeal or otherwise challenge his conviction of sentence if the term of imprisonment were 30 months or below and Petitioner stated that he understood that waiver. (*Id.* at 10-11.). Also, the following colloquy took place:

> The Court: [A]re you aware that the maximum term of imprisonment on this charge is five years incarceration?
>
> The Defendant: Yes.
>
> The Court: And do you also understand that the minimum term of imprisonment here is zero?
>
> The Defendant: Yes.
> . . .
>
> The Court: Do you understand, as well, Mr. Papetti, that the Court may order restitution if it so directs?
>
> The Defendant: Yes.
>
> The Court: And, sir, do you also realize that if any jail time is imposed, a period of three years of supervised release, must be imposed, as well?

The Defendant: Yes.

The Court: Do you also understand that the maximum fine that may be imposed here is $250,000 or twice the value of the gross gain or loss, whichever is greater?

The Defendant: Yes.

The Court. Now, Mr. Papetti, have you discussed the sentencing guidelines with your attorney?

The Defendant: Yes.

The Court: And are you aware of the fact that based on certain recent Supreme Court decisions, the sentencing guidelines are advisory, they are not mandatory?

The Defendant: Yes.

. . .

The Court: All right. And do you understand, sir, that any estimates of the guideline range, and I see that there are estimates included in the plea agreement, that they are not binding on the Court unless the Court says it will be bound by that range?

The Defendant: Yes.

The Court: And do you realize, Mr. Papetti that if the sentence which Judge Hurley imposes is more severe than you expect, you will nonetheless be bound by guilty plea and you will not be permitted to withdraw it?

The Defendant: Yes.

The Court: Do you have any questions, Mr. Papetti, that you would like to ask me about the charge or your rights or anything else relating to this matter?

The Defendant: No.

The Court: Are you ready to plead, sir?

> The Defendant: Yes.
>
> . . .
>
> The Court: Mr. Papetti, are you satisfied with your legal representation in this matter?
>
> The Defendant: Yes.
>
> The Court: Mr. Papetti, then, what is your plea to the information.
>
> The Defendant: Guilty.
>
> The Court: Are you making this guilty plea voluntarily and of your own free will?
>
> The Defendant: Yes.
>
> The Court: Has anybody threatened or force you to plead guilty?
>
> The Defendant: No.
>
> The Court: Other than the plea agreement with the government that's now been stated on the record, has anyone made any promises that caused you to plead guilty?
>
> The Defendant: No.
>
> The Court: Has anyone made any promise to you as to what your sentence will be?
>
> The Defendant: No.

(*Id.* at 12-15.) Judge Tomlinson recommended to this Court that Petitioner's plea be accepted. (*Id.* at 18-19.)

On December 12, 2008, Petitioner appeared for sentencing. Initially, the Court stated that the plea complied with the requirements of Rule 11 and it therefore was prepared to accept the plea allocution. Upon inquiry by the Court, neither the government nor Petitioner

objected to acceptance of the plea. (Dec. 12 2008 Tr. at 2.) Petitioner advised the Court that he had reviewed the pre-sentence report ("PSR") with this attorney and that he was satisfied with his legal representation. (*Id.* at 3.)

The government having no objection to the PSR, the Court turned to the sentencing memorandum submitted on behalf of Petitioner which disagreed with the amount of the loss set forth in the PSR and requested a non-guideline sentence of probation. According to the PSR, the amount of the loss was $195,048, whereas Petitioner claimed is was "something less than $50,000." (Dec. 12, 2008 Tr. at 3.) The government advised the Court that, consistent with what it advised defense counsel at the time of the plea, the government believed it could prove approximately $79,000.00. The Court inquired whether the figure in the plea agreement was satisfactory or whether a hearing was necessary. Defense counsel advised that "My client and I are prepared and we would ask the Court to accept, as outlined by the government this afternoon, the amount that we had agreed to in the plea agreement. As I indicated in my sentencing memorandum, Judge, at the time my client was arrested on these charges he cooperated with the investigation, and we still believe that the amount of the loss was somewhere less than $50,000. But in order to put this matter behind Mr. Papetti, we had agreed the amount we would rely on would be the $79,000 that was indicated by the government." (*Id.* at 4-5.) Thereafter, the issue of the loss amount became germaine again with respect to restitution, the Court noting that the loss amount for guideline purposes did not necessarily mean that the same number should be applicable for purposes of restitution. (*Id.* at 15.) A recess was taken. According to the declaration of Petitioner's counsel, during the recess he advised the Petitioner that he could challenge the Probation Department's estimated loss amount but noted that the

6

guideline range could be higher if the court determined that the loss amount was greater than set forth in the plea agreement; Papetti agreed to forego a hearing and agreed that the loss amount estimated in the plea agreement should be relied on by the Court. (Russo Decl. at ¶ 5.)

The Court sentenced Petitioner to a non-guideline sentence, and ordered restitution in the amount of $79,000. The Court stated:

> I have considered all the factors carefully, and I have had difficulty with the sentence.
> Defense counsel's done a good job on behalf of his client, and I have considered, very carefully, the position that he has so professionally espoused. Having done so, though, I do disagree, as far as whether the sentence should include a period of incarceration. I think it should include a period of incarceration, and the reason is basically if somebody engages in misconduct, which is a part protracted conduct to basically defraud the United States, general deterrence considerations dictate that some period of incarceration is required.
> Now, in saying that I don't mean to suggest that that's the sole factor driving this Court's sentence. It isn't. I have considered all the factors, but it is a factor and to me it's one that, when viewed in conjunction with all the other factors, dictates that a period of incarceration is required.
> I am going to impose a non-guidelines sentence, I am not going to incarcerate him for 21 months. I am going to impose a sentence, which is as follows. The defendant will be sentenced to a period of incarceration of one year and a day. That will be followed by three years of supervised release. . . .

(*Id.* at 21-22.)

### Overview of Papetti's Petition

In his petition, Papetti admits that "[i]n the time period of September 2003 and October 2007 [he] was taking part in a scheme to produce false postage for business mailings. [He] used counterfeit printed postage on compact discs and DVD movies he sold over the internet. (Petition at 1.) Indeed, he does not seek to vacate his plea. Rather, asserting that the

amount of the loss was "less than $10,000" (Petition at Sections III and IV), Petitioner requests that "[a] re-hearing on sentencing and the amount of the victims [sic] loss and restitution should be held and [his] sentence should be vacated and re-issued pursuant to the proper facts and law." (Petition at Section VI.)

The ground asserted in support of habeas relief is ineffective assistance of counsel. According to Petitioner his counsel was ineffective because (1) counsel did not request a hearing or otherwise dispute the monetary loss sustained by the United States Postal Service thereby resulting in Mr. Papetti's guideline levels being increased and exposing him to a greater sentence and an unreasonable restitution amount, (Petition at Section III); and (2) counsel was not "prepared or properly informed of the consequences of the plea and the range of sentence and the amount of loss to the victim," (Petition at Section IV).

## Discussion

### I. Petitioner Waived the Right to Challenge His Sentence

It is well settled that "[i]n no circumstance . . . may a defendant, who has secured the benefit of a plea agreement and knowingly waived the right to appeal a certain sentence then appeal the merits of the sentence conforming to the agreement." *United States v. Salcido-Contreras,* 990 F.2d 51, 53 (2d Cir. 1993). Similarly, a defendant who has secured the benefit of a plea agreement and knowingly waived the right to collaterally attack a certain sentence may not then collaterally attack the sentence conforming to the agreement. *Garcia-Santos v. United States,* 273 F.3d 506 (2d Cir. 2001). *See also United States v. Haynes,* 412 F.3d 37 (2d Cir. 2005); *United States v. Morgan,* 406 F.3d 135 (2005); *United States v. Monzon,* 359 F.3d 110 (2d Cir. 2004); *United States v. Yemitan,* 70 F.3d 746, 747-48 (2d Cir. 1995). The Second

8

Circuit has held, however, that "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which a waiver has been procured, here, the plea agreement." *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002). The waiver is unenforceable only if the defendant has a "meritorious" claim that "the waiver was the result of ineffective assistance of counsel." *Monzon*, 359 F.3d at 118-19; *accord, e.g.*, *Brown v. United States,* 637 F. Supp. 2d 212, 217 (S.D.N.Y. 2009); *Deloir v. United States*, 2009 WL 1883263, at *2 (S.D.N.Y. June 30, 2009): *Marulanda v. United States*, 2009 WL 1546315, at *2 (E.D.N.Y. June 2, 2009); *Reyes v. United States*, 2009 WL 928284, at *2 (S.D.N.Y. Mar. 27, 2009) ("A defendant's waiver of his right to bring a petition pursuant to Section 2255 is unenforceable where defendant was denied effective assistance of counsel in connection with the negotiation and execution of the agreement containing the waiver."); *Concepcion-Baez v. United States*, 2009 WL 765045, at *1 (E.D.N.Y. Mar. 23, 2009); *Antonucci v. United States*, 2009 WL 185996, at *3; *Fuller v. United States*, 2008 WL 4614998, at *1 (E.D.N.Y. Oct. 15, 2008).

"[W]ith respect to claims of ineffective assistance of counsel that are limited to post-plea events (e.g., sentencing), however, the waiver remains enforceable." *Marulanda v. United States*, 2009 WL 1546315, at *2; *accord*, *Garcia-Santos*, 273 F.3d at 508-09; *Ceballos v. United States*, 2010 WL 3189907, at * 2 (E.D.N.Y. Aug. 9, 2010); *Concepcion-Baez*, 2009 WL 765045 at *1 ("a valid waiver will be upheld against a challenge to the correctness of a sentence."); *Castellanos v. United States*, 2008 WL 4548916, at *3, 5 (S.D.N.Y. Oct. 8, 2008); *Wall v. United States*, 2008 WL 3049948, at *1 (N.D.N.Y. Aug. 1, 2008) (" '[C]laims of ineffective representation concerning sentencing generally do not survive the § 2255 waiver because ... [they] relate[ ] only to the performance of defendant's attorney with respect to

9

sentencing and [do] not go to the validity of the plea agreement itself.' ") (citation omitted) (alterations in original).

Here, as set forth above, Petitioner received specific notice of his waiver of the right to appeal and the effect of his waiver on his right to file a § 2255 motion. He knowingly and voluntarily waived his right to appeal or otherwise challenge his sentence. His ineffective assistance of counsel claim rests on the assertions that his counsel did not request a hearing or otherwise dispute the monetary loss sustained by the United States Postal Service thereby resulting in Mr. Papetti's guideline levels being increased and exposing him to a greater sentence and an unreasonable restitution amount, and was not "prepared or properly informed of the consequences of the plea and the range of sentence and the amount of loss to the victim." Papetti does not seek to vacate his plea but rather only to be resentenced. Since his ineffective assistance of counsel claim is limited to post-plea events, the claim is barred by his plea agreement to waive collateral attack of a sentence of 30 months or below.

## II. The Ineffective Assistance Claim Has no Merit.

Even if Papetti had not waived his claim of ineffective assistance of counsel, the Court finds it to be without merit. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must establish (1) that his counsel performed deficiently, and (2) that the deficiency caused actual prejudice. *Id.* at 687. *See also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Under the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner may prove the deficiency

prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id*. at 690, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham*, 313 F.3d at 730. In a sentencing context, an ineffective assistance claim requires a "demonstrat[ion] that the alleged errors of his counsel so prejudiced him that but for these errors, the result of his sentencing hearing would have been different." *United States v. Robinson*, 354 Fed. Appx. 518, 2009 WL 4249851, at *1 (2d Cir. Nov. 30, 2009) (Summary Order). Also, the Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's performance, because "'[i]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically in *Strickland* noted that the federal district courts need not address both components if a petitioner fails to establish either one. The relevant excerpt from that decision reads:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade

11

>     counsel's performance. If it is easier to dispose of an
>     ineffectiveness claim on the ground of lack of sufficient prejudice,
>     which we expect will often be so, that course should be followed.

466 U.S. at 697.

The two *Strickland* requirements are conjunctively stated, meaning that the failure to establish either is fatal. As the sentencing judge, I am able to definitely address the issue of prejudice as discussed *infra*. *United States v. Nino*, 878 F.2d 101, 104-05 (3rd Cir. 1989) (second *Strickland* prong not satisfied given that "the district judge who considered the habeas corpus motion also was the sentencing judge to whom any Rule 35(b) motion would have been submitted, and he conclusively stated in his opinion that had a Rule 35(b) motion been submitted to him, he would not have granted it"); *see also Figueroa Almonte v. United States*, 915 F.2d 1556, 1990 WL 151372, at *3 (1st Cir. Sept. 10, 1990) (unpublished decision); *Voytik v. United States*, 778 F.2d 1306, 1310 (8th Cir. 1985); *Rainford v. United States*, 648 F. Supp. 2d 476, 484 (E.D.N.Y. 2009); *Palacios v. United States*, 2009 WL 604597, at *9 (E.D.N.Y. Mar. 4, 2009). Simply put, petitioner's sentence would not have been different had the guideline range been calculated using a loss of under $10,000.

The sentence imposed by this Court was one year and a day. Assuming a loss of under $10,000[1] Petitioner's total offense level would have been twelve, resulting in a guideline range of 10 to 16 months.[2] Moreover, the loss amount had no bearing on the protracted nature of

---

[1] The Court notes that while Papetti currently claims that the loss is under $10,000, the sworn statement he gave Postal Inspector in October 2007 states that the value of the manipulated postage over the years was $10,000 to $15,000. Also, the presentencing memorandum submitted on Petitioner's behalf asserts a loss of "less than $50,000."

[2] The Court's calculation is as follows: A loss of less than $10,000 would raise the base offense level of 9, two points to 11. (2B5.1(b)(1)(B). Added to that would be 2 points for

12

Papetti's criminal activity, which lasted over approximately four years. Given that the sentence imposed was within the guideline range for Petitioner as calculated with a loss of under $10,000, Papetti cannot show actual prejudice with respect to the term of incarceration.

Turning then to the issue of restitution, Papetti's claim of ineffective assistance fails for two reasons. First, the decision to forego a *Fatico* hearing "is a "'matter of strategy' and [a court will] presume that such a strategy is sound absent a strong showing to the contrary." *United States v. Santiago*, 330 Fed. Appx. 239, 2009 WL 1448992 (2d Cir. May 26, 2009) (Summary Order) (quoting *United States v. Lee*, 818 F.2d 1052, 1056 (2d Cir. 1987). *See Schwanborn v. United States*, 492 F. Supp. 2d 155, 163 (E.D.N.Y. June 20, 2007) (noting that "[s]ome authority exists for the proposition that the decision whether to request a *Fatico* hearing . . . is a matter committed to the discretion of the defense attorney, which cannot give rise to an ineffective assistance claim.") Counsel's decision to forgo such a hearing in this case was eminently reasonable given that the PSR indicated a loss amount of $195,048 based upon mailings observed over a four month period, counterfeit IBI labels, and invoices seized from Papetti's car and residence.

Second, Petitioner's claim of a loss under $10,000 is based upon tax returns for the years 2003 to 2007. According to Papetti:

> These tax returns on the Schedule C indicate the mailing and shipping costs of the business run by Mr. Papetti and show at most an annual cost of shipping being $4,326 in 2003. This is

---

custody or control over a counterfeiting devise or materials, (2B5.1(b)(2)(A), for a total of 13 points. However, since 2B5.1(b)(2)(A) applies and the offense level is less than 15, the offense level is increased to 15 pursuant to 2B5.1(b)(3). Subtracting two points for acceptance of responsibility and one point for pleading guilty prior to March 28 would yield an offense level of 12 with a guideline range of 10 to 16 months.

> immediately prior to the alleged unlawful conduct of defendant.
> The costs of shipping decreased approximately $900.00 for 2004.
> Thus, where there is no significant increase in business or items
> mailed by [Petitioner], the approximate loss of the victim is under
> $1,000. The greatest change in the shipping costs for Mr. Papetti's
> business was from $4,773.00 in 2005 to $1,002.00 in 2006. Here
> there is a difference of approximately $3,700.00 for a one-year
> period. Thus using the tax returns as a guideline there is less than
> $10,000.00 in losses to the victim here.

(Petition at Section III.) Papetti's reliance on these tax returns is misplaced.

Using the 2003 tax return as a base is inappropriate. First, the 2003 tax return separates out "shipping" costs from "shipping supplies," whereas the 2004 return lists no amount for "shipping" and $2232 for "shipping supplies" and the 2005, 2006, and 2007 returns lists amounts for "shipping/supplies," presumably aggregating the cost of shipping with the cost of shipping supplies. Second, Papetti's argument fails to consider the relative amounts of gross sales. In 2003 the tax return list gross sales of $49,159.00. The returns for 2004, 2005, 2006 and 2007 list gross sales of $150,300.00, $171,718.00, $192,398.00, and $66,285.00, respectively. Third, and perhaps most importantly, the fact that Petitioner spent far less on shipping in the years from 2004 to 2007 is consistent with his theft of postage during the same period.

Given that the tax returns do not support Papetti's claim as to the amount of the loss, he cannot show prejudice by virtue of his counsel's failure to request a *Fatico* hearing.

Finally, although not in the petition itself, the Court will address Papetti's assertion that his counsel "told [him] if [he] pled guilty as [he] did that [he] would only receive a sentence of probation. [He] relied upon the representation of [his counsel] prior to [his] plea of guilty and after the plea up to and including the sentencing hearing." Papetti Aff., sworn to July 15, 2009; *see also* Papetti Aff. sworn to Nov, 24, 2009 at ¶¶ 3 & 4. This assertion is

contradicted by the declaration of his counsel which states that "[a]t no time during [his] representation of Papetti did I promise him that he would not have to serve any jail time. I simply stated that the statute to which he pleaded guilty permitted the Court, in its discretion, to sentence him to probation." More importantly, the assertion in Papetti's affidavit is flatly contradicted by the plea allocution in which Papetti affirmed that no one made any promises to what his sentence would be.

The allocution by itself is sufficient to find that Papetti understood that there was no guarantee that he would receive any particular sentence "regardless of what counsel had allegedly 'promised' him beforehand." *Daija v. United States*, 2010 WL 2605736, at *7 (S.D.N.Y. June 29, 2010). To paraphrase the *Daija* Court:

> A federal habeas court is entitled to rely on statements made during an allocution even in the face of a later, contrary claim that a plea was not knowing or voluntary. *See, e.g.*, *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir.2001) (per curiam); United States v. Hernandez, 242 F.3d 110, 112-13 (2d Cir.2001) (per curiam) (citing cases); *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir.2001) (testimony at allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.") (citations omitted). Thus, federal courts reviewing habeas claims similar to those [Petitioner] asserts have held that where a defendant affirms during a plea hearing that he or she understands that the court may impose a longer sentence despite any assurances the defendant may have received, the defendant may not collaterally challenge the voluntariness of the plea on those grounds. *See, e.g., Brama v. United States*, 2010 WL 1253644, at *3 (S.D.N.Y. Mar.16, 2010) (defendant's statements during plea allocations reflect he understood that "an 87 month sentence was within the Court's discretion") (citations omitted); *Ochoa-Suarez v. United States*, 2008 WL 2220637, at *4 (S.D.N.Y. May 27, 2008) (where petitioner's claim as to lack of understanding of applicability

15

> mandatory minimum sentence was contradicted by plea allocution,
> it would be "summarily rejected") (citing, inter alia, *Hernandez*,
> 242 F.3d at 114 (a "district court [is] entitled to rely upon the
> defendant's sworn statements, made in open court with the
> assistance of a translator, that he understood the consequences of
> his plea, had discussed the plea with his attorney . . . and had been
> made no promises except those contained in the plea agreement")
> (citations omitted)). Accordingly, [Papetti] is not entitled to
> habeas relief on the ground that his plea was not knowing and
> voluntary.

*Daija*, 2010 WL 2605736, at *7; *see also Goldberg v. United States*, 100 F.3d 941, 1996 WL 10104 (2d Cir. 1996) (Summary Order) "([C]laim that counsel promised him a sentence of no more than seven years is also baseless because he stated during the plea colloquy that he had not been promised anything with regard to his guilty plea. . . .. Moreover, even assuming that his attorney provided a mistaken estimate of [defendant's] likely sentence, this is insufficient to support a claim for ineffective assistance of counsel.) (citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir.1992) (a defendant's statements during plea colloquy should be regarded as conclusive in the absence of a believable reason for justifying a departure from the apparent truth of those statements) and *United States v. Sweeney*, 878 F.2d 68, 69-70 (2d Cir.1989) (lawyer's "erroneous estimate" of guideline sentencing range not ineffective assistance of counsel)); *Roa v. United States*, 101 F.3d 1394, 1996 WL 494987 (2d Cir. 1996) (Summary Order); *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir., 1989) ("The law in this Circuit prior to the Sentencing Guidelines was clear that a defendant was not entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence. . . . Now that we have the Guidelines, we do not believe that appellant may avoid the effect of our precedents by characterizing a mistaken prediction as ineffective assistance of counsel.") (citations omitted). *See generally Puglisi v.*

*United States*, 586 F.3d 209, 214 (2d Cir. 2009) (In a § 2255 case "a district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding.")

## Conclusion

Petitioner's § 2255 motion is denied. Pursuant to Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied as Petitioner had not made a substantial showing of a denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322(2003); *Luciadore v. New York State Div. of Parole* 209 F.3d 107, 112 (2d Cir 2000).

The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
August 31, 2010    /s
                    Denis R. Hurley
                    Senior District Judge